# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Francine Gaillard, *on behalf of herself and all others similarly situated*, </br></br>　　　　　Plaintiffs, </br></br>　v. </br></br>Capital One Auto Finance, a division of Capital One, N.A.; Axiom Product Administration, LLC; and John Doe Defendants, </br></br>　　　　　Defendants. | Case No. _____ </br></br></br>**CLASS ACTION COMPLAINT** </br></br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff Francine Gaillard, individually and on behalf of all other persons similarly situated, through her undersigned attorneys, brings this action for breach of contract, fraud in the inducement, breach of contract accompanied by fraudulent act, violation of the South Carolina Unfair Trade Practices Act, and violation of the federal Fair Credit Reporting Act (FCRA), and alleges as follows:

## NATURE OF THE ACTION

　　　　1.　　This is a consumer protection class action. Plaintiff seeks for herself, and all others similarly situated, relief from Defendants' predatory refusal to honor the terms of Guaranteed Asset Protection (GAP) products they sell to consumers purchasing financed automobiles.

　　　　2.　　In the event of a total loss of the vehicle, a GAP product promises to cover the difference between what the purchaser owes the finance company on an automobile and what the insurer pays on the claim for its loss, less certain permitted deductions.

　　　　3.　　GAP protection targets lower-income buyers. Lower-income buyers are more likely to purchase GAP products both because they have less ability to pay the "gap" in the event

1

of a total loss, and because they generally finance vehicles at much higher rates and therefore owe larger financing charges, increasing the size of the "gap."

4. There are two types of GAP product: GAP waiver and GAP insurance. GAP insurance is offered by insurers and is regulated by state insurance regulators. GAP waiver is a contractual obligation added to the retail installment contract to waive any remaining indebtedness in the event of a qualifying loss. GAP waiver products are attractive to dealerships and finance companies because they do not require an insurance company to administer the product and so they avoid the regulatory scrutiny applied to insurers.

5. Defendant Axiom Product Administration, LLC administers GAP waiver products. In so doing, it willfully breaches the clear contractual terms governing the GAP product—terms it created—by basing its payment on an actual cash valuation method of their own choosing, rather than the collision insurance payment, resulting in a substantial underpayment on each claim. Axiom does this as a matter of policy and standard business practice *on every claim*.

## PARTIES

6. Plaintiff Francine Gaillard is a resident of Richland County, South Carolina.

7. Defendant Capital One, N.A., is a national bank association chartered under the laws of the United States with its principal place of business in Virginia. Capital One Auto Finance is a division of Capital One, N.A. (together referred to as "Capital One"), with its principal place of business in Texas.

8. Defendant Axiom Product Administration, LLC (Axiom) is a limited liability company organized under the laws of the state of Missouri and authorized to do business in South Carolina. It has been in business since April 28, 2014.

9. John Doe Defendants are banks and similar institutions financing consumer automobile purchases under loan or installment contracts containing a GAP waiver product administered by Axiom. The identity of the John Doe Defendants is known to Axiom and Plaintiff will name the John Doe Defendants as soon as Axiom discloses their identities.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, as the amount in controversy, exclusive of interest and costs, exceeds $75,000 and complete diversity exists between the named parties.

11. The Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a member of the Class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

12. The Court has personal jurisdiction over Defendants because the claims asserted in this action arise from the named Defendants' contacts with South Carolina.

13. Venue is proper in the District of South Carolina under 28 U.S.C. § 1391 because the most substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

14. Axiom administers GAP waiver products on behalf of finance companies like Capital One and John Doe Defendants. Dealerships sell the GAP product to the consumer at the time of purchase, the GAP purchase is included in the amount financed and the contract for the GAP product is an addendum to the finance contract between the consumer and the dealership. The finance contract, including the GAP Contract, is then immediately assigned to finance

3

companies like Capital One, which agreed to purchase the finance contract from the dealership before the deal was executed.

15. Axiom is the express agent of Capital One and John Doe Defendants for the administration of the GAP waiver obligations in their loan agreements with Plaintiff and other Class members. The loan agreements are the agency contracts between Capital One and John Doe Defendants and Axiom. Capital One and John Doe Defendants consented to allow Axiom to act for it in administering their GAP waiver obligations by purchasing loan agreements expressly stating the GAP product would be administered by Axiom. Said purchase occurred simultaneously with the execution of the loan agreements and was agreed to by all parties prior to execution. Capital One and John Doe Defendants thus expressly identified Axiom as their agent during the formation of the loan agreements.

16. Axiom acted within the scope of its agency when administering the GAP products contained in Plaintiff and other Class members' loan agreements.

17. On December 13, 2018, Plaintiff purchased a 2015 Kia Optima from Dick Smith Ford, an auto dealer in Columbia, South Carolina, financed under a retail installment contract (the "Loan Agreement") (**Exhibit A**).

18. Plaintiff paid Dick Smith Ford valuable consideration for a GAP waiver product provided by Axiom. The terms of the GAP protection were set forth in the GAP Contract (**Exhibit B**) attached as an addendum to the Loan Agreement by and between Plaintiff and Dick Smith Ford.

19. The Loan Agreement, including the GAP Contract, was contemporaneously assigned to Capital One by Dick Smith Ford at the time of purchase. The assignment was disclosed to and agreed by Plaintiff.

20. The GAP Contract contained a material term wherein Capital One agreed to waive rights against Plaintiff for the amount due on the loan in the event of a qualifying loss.

21. The GAP Contract defines a qualifying loss as "the difference between the Net Payoff and the Primary Carrier settlement or in the event of no Primary Carrier, the Net Payoff and the Actual Cash Value." The Net Payoff is the portion of the unpaid balance according to the original payment schedule of the Financing Contract.

22. The GAP Contract defines a Total Constructive Loss as direct and accidental damage to the vehicle resulting in a total loss of value.

23. In the event of a Total Constructive Loss, the Qualifying Loss is "the difference between the Net Payoff and the Primary Carrier settlement or in the event of no Primary Carrier, the Net Payoff and the Actual Cash Value" The Net Payoff is the portion of the unpaid balance according to the original payment schedule of the Financing Contract.

24. On November 11, 2019, the covered vehicle sustained a Total Constructive Loss. The Net Payoff was $15,134.31 on the date of loss. Plaintiff's primary insurance carrier, USAA, paid $10,340 in settlement of the claim.

25. According to the express terms of the GAP Contract, the actual cash value is relevant only in the absence of a primary carrier. Where there is a primary carrier settlement, the GAP Contract covers the difference between the Net Payoff and the settlement amount.

26. Despite being aware that there was a primary carrier settlement, Axiom tendered GAP coverage based on its own estimate of the actual cash value of the vehicle at $12,700 less a service contract refund of $767.49, resulting in an underpayment of the amount due under the GAP Contract.

27.     Axiom estimated the actual cash value of the vehicle using a valuation from the National Automobile Dealers Association (NADA).  Axiom's management is aware that insurers do not use NADA to determine how much to pay on a claim unless required by state regulation. Insurers instead prefer to use valuations provided by CCC Information Services ("CCC"), which works exclusively with insurance companies.   Nationwide, GEICO, Allstate, and USAA, among others, all use CCC where possible.

28.     Axiom knows the GAP Contract, an adhesive contract it drafted, does not permit it to substitute its own actual cash value determination for what the insurer actually paid.  Yet it unabashedly does exactly that in every claim it processes, including Plaintiff's claim.  *See, e.g.*, **Exhibit C** (Axiom's statement to the Better Business Bureau).

29.     The GAP Contract has a "mitigation of loss" provision providing,

> **You** should do all things reasonable and practical to avoid any loss covered under this **Addendum** and to protect the **Collateral** from any further loss.  **You** should also take reasonable measures to ensure that the maximum amount of **Actual Cash Value** of the **Collateral** is paid by **Your Primary Carrier**.

30.     The second sentence of this provision clearly means the claimant must cooperate fully with the insurer's claims adjuster.  Axiom however "interprets" this provision to require Plaintiff to haggle with USAA over the valuation of the vehicle.  Axiom's interpretation is specious because there is no "reasonable measure" by which a consumer could cajole a national insurance company into using a valuation method less favorable to the insurer than the insurer's preferred valuation method, which the insurer is permitted to use under the insurance policy and applicable laws and regulations.

31.     Purportedly acting on its specious interpretation of the "mitigation of loss" provision, on April 9, 2020, Axiom requested Plaintiff ask USAA to reevaluate the value of her vehicle.

6

32. Axiom asserts Plaintiff failed to comply with its request. Axiom however knows this assertion is false. Despite having no obligation to haggle with USAA, Plaintiff did promptly contact USAA about the valuation. Axiom was aware of her contact with USAA because USAA employee Dashea Madison-Jackson contacted Axiom on Plaintiff's behalf *before* responding to Plaintiff on April 10, 2020, *the very next day*. *See* **Exhibit D** (correspondence).

33. A material term and condition of the GAP Contract was the agreement by Capital One to waive rights against Gaillard for the remaining amount due on the auto loan in the event of a qualifying loss.

34. Despite the clear terms of the GAP Contract, Capital One has refused to waive its rights against Plaintiff for the amount due on her automobile loan. Instead, Capital One wrongfully pursued debt collection activities against Plaintiff, and then, in February 2020, reported an adverse "charge off" of $2,297 to Equifax, a credit reporting agency. **Exhibit E** (excerpt from Equifax credit report).

35. In March 2020, Plaintiff notified credit reporting agencies that the $2,297 purported debt is disputed. The dispute notification is noted on Plaintiff's Equifax credit report. Capital One however refused to conduct a reasonable investigation of the dispute or to modify the inaccurate information. That Capital One had notice from the credit reporting agencies of the dispute is shown on Plaintiff's TransUnion credit report, which provides Capital One's address regarding the $2,297 purported debt as "CB [i.e., 'Credit Bureau'] Disputes Team" at Capital One Auto Finance's principal place of business in Texas. **Exhibit F** (excerpt from TransUnion credit report).

## TOLLING OF THE STATUTE OF LIMITATIONS

36. <u>Fraudulent Concealment</u>. Axiom has known the terms of the GAP contracts it drafted, its own policies regarding claims under those GAP contracts, the falsity of its

7

representations in the GAP contracts, that it intended consumers to rely on those false representations when entering GAP contracts, that it would not honor the terms of the GAP contracts, and that if challenged it intended to make false statements blaming the consumer for failure to mitigate losses, since it began operating on April 28, 2014 through the present. During that time, Axiom has concealed these facts from Plaintiff and other Class members. Any applicable statutes of limitations have therefore been tolled by Axiom's knowledge, active concealment, and denial of the facts alleged herein, which is ongoing and which knowledge and behavior is imputed to Axiom's principals Capital One and John Doe Defendants.

37.     Estoppel.  For the reasons set forth above, Axiom, Capital One, and the John Doe Defendants are estopped from relying on any statute of limitations defense to any claim in this action other than the FCRA claims.

38.     Discovery Rule.  The causes of action alleged herein did not accrue until Plaintiffs and other Class members discovered until after Defendants refused to honor the GAP Contract and after Axiom exhausted their fraudulent efforts to blame consumers for failing to mitigate losses.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities who purchased a GAP waiver product administered by Axiom and made a claim for a qualifying total loss on or after April 28, 2014.

40.     Excluded from the Class are current and former officers and directors of Capital One, Axiom, or John Doe Defendants; members of the immediate families of the officers and directors of Capital One, Axiom, or John Doe Defendants; Capital One, Axiom, or John Doe Defendants' legal representatives, heirs, successors, assigns, any entity in which either of them has or has had a controlling interest; any federal, state, or local governmental agencies; any judges

8

who have decided or are assigned to decide some or all issues in this case; any persons related to a judge in a manner that would disqualify the judge from hearing the case; and any chambers staff working for the assigned judge or other courthouse staff who perform tasks relating to this matter.

41. Also excluded from the Class are persons or entities who had no primary insurance carrier settlement on their qualifying total loss claim.

42. The Class contains one Subclass:

Credit Reporting Subclass: All Class members who had adverse credit information regarding any remaining balance due regarding the financing for the vehicle that was the subject of their qualifying total loss, which was furnished to a credit reporting agency and which the Class member disputed by written notice to the credit reporting agency on or after July 20, 2019.

43. Plaintiff alleges FCRA claims on behalf of the Credit Reporting Subclass.

44. Plaintiff reserves the right to revise the Class definition based on facts learned while litigating this matter. Plaintiff expects the Class and Subclass will be further divided into Subclasses based on state of purchase, asserting state-specific causes of action, when Axiom discloses the purchase locations of the Class members.

45. This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believes that there are many thousands of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

46. Common questions of law and fact arise from Axiom, Capital One, and John Doe Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

a. Interpretation of the GAP Contract;

b.   Whether Axiom, Capital One, and/or John Doe Defendants complied with the GAP Contract, and, if not, the manner in which they breached it;

c.   Whether Axiom, Capital One, and/or John Doe Defendants knew they would not comply with the GAP Contract at the time of sale;

d.   Whether, and to what extent, injunctive relief should be imposed on Axiom, Capital One, and John Doe Defendants to prevent such conduct in the future;

e.   Whether the members of the Class have sustained damages as a result of Axiom, Capital One, and John Doe Defendants' wrongful conduct; and

f.   The appropriate measure of damages or other relief.

47.   Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages caused directly by the same wrongful conduct of Axiom, Capital One, and John Doe Defendants, as detailed herein.  In addition, the factual underpinning of Axiom, Capital One, and John Doe Defendants' misconduct is common to all Class members and represents a common misconduct resulting in injury to all Class members. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

48.   Plaintiffs will fairly and adequately represent and pursue the interests of the Class. Plaintiffs understands the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class members.  Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

49.   Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Class members.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to litigate this class action adequately and vigorously.  Plaintiffs

and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.

51. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Axiom, Capital One, and John Doe Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

52. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

53. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Axiom, Capital One, and John Doe Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

54. Axiom, Capital One, and John Doe Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as

a whole. As such, Axiom, Capital One, and John Doe Defendants practices make injunctive and declaratory relief with respect to the Class appropriate.

## CAUSES OF ACTION

### FOR A FIRST CAUSE OF ACTION
### Breach of Contract
*Brought by all Class members against Capital One and John Doe Defendants*

55.  Each of the above allegations is repeated as fully as if set forth verbatim.

56.  The Loan Agreement is a contract between Plaintiff and Capital One. The GAP Contract is an addendum incorporated into the Loan Agreement. Other Class members likewise have loan agreements with Capital One or a John Doe Defendant with GAP contracts incorporated as addenda into those loan agreements.

57.  Capital One breached the GAP Contract by refusing to waive the balance due from Plaintiff in the amount of $2,297.36, plus interest, late fees, and collection costs.

58.  Plaintiff brings this claim on behalf of herself and all other Class members who have likewise been incurred by substantially similar conduct by Capital One and John Doe Defendants who have refused to waive balances due when required under the terms of GAP products administered by Axiom on behalf of those Defendants and incorporated as addenda to Plaintiff and other Class members' loan agreements.

59.  Plaintiff and other Class members have suffered loss and damages because of the breach of the loan agreement, including loss of funds and the inability to obtain credit.

60.  Plaintiff and other Class members therefore are entitled to judgment against Capital One and John Doe Defendants for all actual and consequential damages.

**FOR A SECOND CAUSE OF ACTION**
**Fraud in the Inducement**
*Brought by all Class members against all Defendants*

61.     Each of the above allegations is repeated as fully as if set forth verbatim.

62.     The Loan Agreement, incorporating the GAP Contract, is a contract under which Capital One undertook to waive rights to collect amounts due in the event of a qualifying loss.

63.     That representation was material to the formation of the GAP Contract, which is incorporated into the Loan Agreement.  Without such representation, Plaintiff never would have assented to the GAP Contract or to the Loan Agreement in its final form.

64.     As set forth above, Axiom is the express agent of Capital One and John Doe Defendants for the administration of the GAP waiver obligations in their loan agreements with Plaintiff and other Class members, and Axiom acted within the scope of its agency when administering the GAP products contained in Plaintiff and other Class members' loan agreements.

65.     Capital One and John Doe Defendants are liable for the frauds their agent, Axiom, committed when acting within the scope of its agency.

66.     Axiom's representation on behalf of its principal, Capital One, that Capital One would waive rights to collect amounts due in the event of a qualifying loss was false.  Capital One did in fact press collection of amounts due despite the qualifying loss.  Capital One expressly authorized Axiom to make that representation.

67.     Axiom knew the representation that Capital One would waive rights to collect amounts due in the event of a qualifying loss was false.  Axiom admits it *always* uses its own NADA valuations, not the primary insurance carrier's settlement, when settling GAP claims on behalf of its principal, Capital One, in clear violation of the GAP Contract terms Axiom drafted for Capital One, even though, as it knows, the insurers generally do not use a NADA valuation but instead use a CCC valuation resulting in a lower payment by the insurer.

68. Axiom's knowledge regarding its representations about the GAP Contract is imputed to its principals.

69. Axiom made the false representation on behalf of its Capital One with the intent that Plaintiff would enter into the Loan Agreement including the GAP Contract.

70. Plaintiff was ignorant of the falsity of the representations made by Axiom on behalf of Capital One.

71. Plaintiff had a right to rely on the truth of the representations made to her when contracting to purchase her automobile, including representations made in the GAP Contract.

72. Plaintiff brings this claim on behalf of herself and all other Class members who have likewise been incurred by substantially similar conduct by Axiom, Capital One and John Doe Defendants who fraudulently induced Plaintiff and other Class members to enter into loan agreements having GAP product provisions.

73. Because of their justified reliance upon false representations made by Axiom on behalf of Capital One and John Doe Defendants, Plaintiff and other Class members have suffered loss and damages, including loss of funds and the inability to obtain credit.

74. Plaintiff and other Class members therefore are entitled to judgment against Axiom, Capital One, and John Doe Defendants for all actual and consequential damages, and for an injunction enjoining Axiom, Capital One, and John Doe Defendants' wrongful conduct.

75. By virtue of Axiom's willful fraudulent acts, which are imputed to Capital One and John Doe Defendants, Plaintiffs and other Class members are also entitled to an award of punitive damages sufficient to impress upon Axiom, Capital One, and John Doe Defendants the seriousness of their conduct and to deter similar conduct in the future.

## FOR A THIRD CAUSE OF ACTION
## Breach of Contract Accompanied by Fraudulent Act
*Brought by all Class members against Capital One and John Doe Defendants*

76. Each of the above allegations is repeated as fully as if set forth verbatim.

77. As set forth above, the Loan Agreement was a contract between Plaintiff and Capital One that Capital One breached.

78. As set forth above, Axiom was Capital One's agent regarding the GAP provisions in the Loan Agreement, expressly authorized to speak for and act for Capital One regarding GAP claims.

79. Axiom had fraudulent intent related to the breach in that it intended to falsely attribute its principal's refusal to waive rights to collect amounts due to Plaintiff's purported failure to comply with mitigation of loss provisions in the GAP Contract, rather than Axiom's own decision not to honor the terms of the GAP Contract, despite knowing the that claim to be false.

80. Axiom committed a fraudulent act accompanying the breach when it demanded Plaintiff haggle with USAA over the valuation of her vehicle to portray her as failing to comply with mitigation of loss provisions in the GAP Contract, and when it told USAA and Plaintiff that the refusal to waive the entire amount due on the loan was due to a legitimate difference in valuation methods.  Axiom committed these fraudulent acts to conceal its own willful violation of the GAP Contract.

81. Plaintiff brings this claim on behalf of herself and all other Class members who have likewise been incurred by substantially similar conduct by Capital One and John Doe Defendants who have refused to waive balances due when required under the terms of GAP products administered by Axiom on behalf of those Defendants and incorporated as addenda to Plaintiff and other Class members' loan agreements.

15

82. Plaintiff and other Class members therefore are entitled to judgment against Axiom, Capital One, and John Doe Defendants for all actual and consequential damages.

83. By virtue of Axiom's willful fraudulent acts, which are imputed to its principals Capital One and John Doe Defendants, Plaintiffs and other Class members are entitled to an award of punitive damages sufficient to impress upon Axiom, Capital One, and John Doe Defendants the seriousness of their conduct and to deter similar conduct in the future.

## FOR A FOURTH CAUSE OF ACTION
### Violation of the South Carolina Unfair Trade Practices Act
*Brought by all Class member against all Defendants*

84. Each of the above allegations is repeated as fully as if set forth verbatim.

85. Defendants committed unfair and deceptive acts in the conduct of trade or commerce by:

   a. Misrepresenting that they agreed to waive their rights against Plaintiff for the amount due in the event of a qualifying loss, when, in fact, they had no such intent;

   b. Failing to abide by the terms of the GAP Contract in waiving their rights against Plaintiff despite the qualifying loss;

   c. Charging late fees, interest, and other charges for an account in which they agreed to waive any amounts due;

   d. For seeking to collect on an account in which they agreed to waive the amounts due;

   e. Using actual cash value to determine the amount to be paid under the GAP Contract regardless of whether there was a primary insurance carrier; and

   f. For such other unfair and deceptive acts as may be found through discovery.

86. Defendants acted willfully in that they knew or should have known their conduct violated the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10 *et seq.*).

87. Defendants' wrongful conduct directly impacts the public interest because of each Defendant's substantial public trade and commerce activity and advertising aimed at the public.

88. Further, Defendants' unfair and deceptive practices have been used on previous GAP purchasers and will continue in the future. Plaintiff has knowledge of at least 27 examples of South Carolina consumers victimized by Defendants' unfair and deceptive practices, and Plaintiff believes there are many more examples in South Carolina. *See* **Exhibit G** (list of claims processed using unfair and deceptive practices).

89. As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff has suffered and continued to suffer damages, including but not limited to the false claim of an indebtedness.

90. Plaintiff brings this claim on behalf of herself and all other Class members who have likewise been injured by substantially similar conduct by Defendants who have used unfair and deceptive practices when refusing to waive balances due when required under the terms of GAP products administered by Axiom.

91. Plaintiff and other Class members therefore are entitled to judgment against Defendants for their unfair and deceptive practices, an award of actual damages, treble damages for their wanton and willful violation, and an award of reasonable attorney's fees, pursuant to South Carolina Code § 39-5-140.

### FOR A FIFTH CAUSE OF ACTION
### Violation of 15 U.S.C. § 1681s-2(b)
*Brought by all Credit Reporting Subclass members against Capital One and John Doe Defendants*

92. Each of the above allegations is repeated as fully as if set forth verbatim.

93. Title 15 U.S.C. § 1681s–2(b)(1) requires furnishers of credit information to conduct a reasonable investigation of consumer disputes. It imposes certain duties on a creditor who has been notified by a credit reporting agency that a consumer has disputed information furnished by that creditor:

17

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> >
> > (C) report the results of the investigation to the consumer reporting agency;
> >
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> >
> > (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> >
> > > (i) modify that item of information;
> > >
> > > (ii) delete that item of information; or
> > >
> > > (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

94.     The investigation 15 U.S.C. § 1681s–2(b)(1) requires creditors to conduct after receiving notice of a consumer dispute from a credit reporting agency must be "a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

95.     As set forth above, Capital One had notice from a credit reporting agency of the dispute.

96.     Capital One willfully refused to perform a reasonable investigation of the dispute or to remove inaccurate information reported to credit reporting agencies. Capital One did not

18

consult the underlying documents to verify the accuracy of its records—not even its own loan agreements. Had Capital One done so in good faith, it would have seen the unambiguous language in the Loan Agreement requiring it to waive collection of the remaining amount due and it would have corrected the information it furnished to credit reporting agencies. Capital One merely checked its own electronic records merely to confirm those records showed Plaintiff owed the reported amount. Capital One knew its actions did not satisfy its obligations under 15 U.S.C. § 1681s-2(b).

97. Plaintiff brings this claim on behalf of herself and all other Credit Reporting Subclass members who have likewise been injured by substantially similar conduct by Defendants who have willfully refused to perform reasonable investigations or to remove inaccurate information reported to credit reporting agencies, despite notice of the dispute from the credit reporting agency.

98. Plaintiff and other Credit Reporting Subclass members therefore are entitled under 15 U.S.C. § 1681n to statutory damages of $1,000 per claim, costs, and reasonable attorney's fees.

99. By virtue of Capital One and John Doe Defendants' knowing and willful violation of their legal duties under 15 U.S.C. § 1681s-2(b), Plaintiffs and other Credit Reporting Subclass members are also entitled to an award of punitive damages sufficient to impress upon Capital One and John Doe Defendants the seriousness of their conduct and to deter similar conduct in the future.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants in this matter in a sum sufficient to adequately compensate her for damages suffered, for statutory damages, for treble damages, for punitive damages, for reasonable attorney's fees, for the costs of this action, for an

injunction enjoining Defendants' wrongful conduct, and for such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Gaillard demands a trial by jury on all issues so triable.

s/Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Christopher P. Kenney (Fed. ID No. 11314)
Phillip D. Barber (Fed. ID No.12816)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29201
(803) 252-4848
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

Tobias G. Ward, Jr. (Fed ID No. 5826)
Derrick Jackson (Fed. ID No. 15192)
TOBIAS G. WARD, JR., P.A.
534 Congaree Avenue
Columbia, South Carolina 29205
(803) 708-4200
tw@tobywardlaw.com
dj@tobywardlaw.com

July 21, 2021
Columbia, South Carolina.